UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAMARIS LOPEZ,

                        Plaintiff,

v.                                            8:12-CV-1338
                                            (GTS/RFT)

RICKY D. MATHELY and BOURDEAU BROS.,
INC.,

                        Defendants.
_____

APPEARANCES:                               OF COUNSEL:

DUPEE & MONROE, P.C.                  JON C. DUPEE, Jr., ESQ.
   Counsel for Plaintiff
30 Matthews Street
P.O. Box 470
Goshen, NY 10924-0470

GOLDBERG SEGALLA LLP            LATHA RAGHAVAN, ESQ.
   Counsel for Defendants
8 Southwoods Boulevard
Suite 300
Albany, NY 12211-2526

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this personal injury action filed by Damaris Lopez

("Plaintiff") is a motion for summary judgment by defendants, Bourdeau Bros., Inc. and Ricky

D. Mathely (collectively, "Defendants").  (Dkt. No. 24.)  For the reasons set forth below,

Defendants' motion is granted.

# I.     RELEVANT BACKGROUND

## A.     Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges that, on September 14, 2009, at approximately 5:25 p.m. in the Town of Phelps, New York, Ricky D. Mathely ("Mathely") carelessly, negligently and recklessly operated a tractor trailer, with the implied consent of its owner, Bourdeau Bros., Inc. ("Bourdeau"), and as a result, came into physical contact with the motor vehicle operated by Plaintiff, causing Plaintiff to sustain serious and permanent bodily injuries, as defined by N.Y. INS. LAW § 5102.  (Dkt. No. 1.)  Plaintiff's Complaint further alleges that, Mathely, who was employed by Bourdeau, was operating the motor vehicle during the course of his employment.

More specifically, Plaintiff's Complaint alleges that Mathely failed to, among other things, keep his vehicle under control, operate his vehicle at a safe speed, properly operate the horn, lights, steering and braking devices, and avoid the occurrence of a collision, causing the injury to Plaintiff.  Further, the Complaint alleges that Mathely changed lanes without signaling, drifted from lane to lane, and failed to take those precautions reasonable and necessary to avoid the occurrence of the referenced accident.

## B.     Parties' Briefing on Defendants' Motion for Summary Judgment

Generally, in support of their motion for summary judgment, Defendants argue that they are not liable to Plaintiff for negligence as a matter of law because (1) there is no evidence that Defendants were involved in the accident in question; and (2) there is no evidence that Plaintiff has a serious injury under New York State Insurance Law Section 5102(d) as a result of the accident in question.  (*See generally* Dkt. No. 24-19 [Defs.' Mem. of Law].)

Generally, in response to Defendants' motion for summary judgment, Plaintiff argues that, (1) based on the current record, a genuine dispute exists as to whether Defendants were involved in the accident in question, for the following four reasons: (a) Plaintiff testified that she was present at the New York State Thruway rest stop where Mathely and his tractor-trailer were stopped and she identified the tractor-trailer as the vehicle that was involved in the accident with her vehicle earlier that day; (b) Trooper Manibanseng testified that Trooper Harling confirmed that he inspected both Plaintiff's vehicle and the tractor-trailer operated by Mathely and that he noted paint transfer from Plaintiff's vehicle to the tractor-trailer; (c) immediately after receiving a call from Plaintiff informing him of the accident, Hector Rodriguez reported the license plate number of the truck he was following to the Thruway Authority as AV19386, which came back registered to Bourdeau; and (d) Trooper Harling called in the tractor trailer, bearing license plate number 60581PA, from the Thruway rest area, and it was again found to be registered to Bourdeau; (2) Defendants have failed to meet their burden of proof that Plaintiff has not sustained a serious injury; (3) a question of fact exists as to whether Plaintiff sustained a significant limitation in her usual and customary daily activities for 90 of the 180 days following the injury based on the affidavits of Plaintiff and Dr. Crawford Campbell, M.D.; and (4) a question of fact exists as to whether or not Plaintiff suffered a significant disfigurement as a result of the motor vehicle accident as evidenced by the photographs annexed to the affidavit of Dr. Campbell. (*See generally* Dkt. No. 29-6 [Pl.'s Opp'n Mem. of Law].)

Generally, in their reply, Defendants argue that (1) there is no admissible evidence that the tractor-trailer owned by Bourdeau and operated by Mathely was involved in an accident with Plaintiff; (2) Plaintiff has failed to demonstrate with objective medical evidence that there is any

issue of fact with regard to the serious injury threshold for the following five reasons: (a) Defendants' doctor is not required to objectively measure range of motion under the circumstances of this case, (b) Plaintiff's response to Defendants' summary judgment motion fails to address the categories of permanent loss of use, permanent consequential limitation of use and significant limitation of a body function or system and therefore, those claims must be dismissed, (c) Plaintiff's self-serving affidavit that contradicts her prior sworn testimony does not raise a question of fact as to whether Plaintiff sustained a medically determined injury that prevented her from substantially all of her usual and customary activities for 90 of the first 180 days following the accident, (d) Plaintiff has not addressed significant limitation of a body function or system in responding to Defendants' motion for summary judgment, and (e) Plaintiff's allegation, made for the first time in response to the Defendants' motion for summary judgment, that she suffered a significant disfigurement as a result of the motor vehicle accident should not be considered, and, in any event, does not raise an issue of fact warranting trial. (*See generally* Dkt. No. 30 [Defs.' Reply Mem. of Law].)

### C.    Undisputed Material Facts

Unless otherwise noted, the following material facts have been asserted and supported by Defendants in their Local Rule 7.1 Statement of Undisputed Material Facts, and either admitted or denied without a supporting record citation by Plaintiff in her Local Rule 7.1 Response. (*Compare* Dkt. No. 24-18 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 29-7 [Pl.'s Rule 7.1 Response][1].)

---

[1]      It is clear to the Court, from a reading of both Defendants' Rule 7.1 Statement and Plaintiff's response thereto that Plaintiff inadvertently failed to respond to Defendants' Statement of Material Fact at Paragraph 26 and that Plaintiffs' Responses at Paragraphs 26

On September 14, 2009, Plaintiff was driving a Ford Explorer on I-90 West, the New York State Thruway ("the Thruway"), heading to Erie, Pennsylvania. Plaintiff's 15-year-old son was a front-seat passenger in the Ford Explorer and was sleeping. Plaintiff's boyfriend, Hector Rodriguez, was driving a U-Haul truck on the Thruway ahead of Plaintiff.

Plaintiff testified that, while traveling on the Thruway, when she attempted to pass a tractor-trailer from the left, the back end of the trailer crossed over into the left lane and collided with her vehicle. (*See* Dkt. No. 24-6 at 33-36 [Dep. of Damaris Lopez, Aug. 22, 2013].) Thereafter, Plaintiff stopped her vehicle on the side of the left hand lane, called Hector with her cell phone and told him that a truck behind Hector had hit her vehicle. When Plaintiff reported the accident to Hector, she saw that he was in the right lane and the tractor-trailer that she reported hit her was also in the right lane behind Hector. Plaintiff then saw Hector move into the left lane, but the tractor-trailer that she was complaining about remained in the right lane. Sometime thereafter, Hector called Plaintiff and told her that he had called the police and was following the tractor-trailer. Plaintiff waited for a New York State Trooper, who arrived almost one hour later.

Hector did not know which lane Plaintiff was in or where she was at the time she called him. Hector testified that when Plaintiff called him, he saw a tractor-trailer in the left-hand lane. The tractor-trailer that Hector saw in the left lane was passing him when Plaintiff called. Hector followed that tractor-trailer that was in the left-hand lane.

_____

through 36 are actually its responses to Defendants' Statements of Fact at Paragraphs 27 through 37. In its discretion, because there is no prejudice to Defendants as a result, the Court considers Plaintiff's responses accordingly.

Hector called 911 and provided the mile-marker where he was at that time. Hector testified that he repeatedly tried to block the tractor-trailer and get the driver's attention by flashing and signaling. The tractor-trailer then suddenly sped off at up to 80 miles per hour, with Hector following at 80 miles per hour, but then the tractor-trailer went faster at 90 to 100 miles per hour. Thereafter, Hector lost sight of the tractor-trailer for a long period of time.

Hector eventually saw a tractor-trailer stopped two rest stops away on the Thruway. He called police and provided information regarding the truck. Hector then drove off on his way to Pennsylvania without waiting for police.

On September 14, 2009, Mathley was driving a Bourdeau tractor-trailer with an empty flatbed on the Thruway. According to Mathley, the tractor-trailer was equipped with a governor, limiting its speed to 65 miles per hour as required by Canadien law, since Bourdeau is located near the border and regularly drives in and out of Canada. The driver of the tractor-trailer cannot increase or change the speed setting since it is set by a mechanic with a computer in a garage.

Mathley stopped at a rest stop to use the facilities. When he returned to his truck, he was met first by a New York State Trooper and then by Plaintiff. Mathley was advised that Plaintiff claimed his tractor-trailer hit her vehicle some distance back on the Thruway. The Trooper took driver and vehicle information from each driver but did not issue any violations. Afterward, both Plaintiff and Mathley drove away.

Plaintiff's truck was damaged along the passenger side at the level of the side mirror and door handles. The height of the flatbed on the Bourdeau truck is 33-34 inches. The height at which Plaintiff's vehicle was damaged at the door handle is 20-42 inches and at the mirror is 45-50 inches.

Plaintiff made no complaints of any injury to the Trooper or to Mathley.  Plaintiff testified that she did not feel injured at the time.  On November 10, 2009, Plaintiff was seen at the emergency room at St. Vincent's Hospital with subjective complaints of neck and shoulder pain.  The emergency room record reflects a note of chronic upper extremity pain, but on examination, a finding of no tenderness of the extremities.  On February 16, 2010, Plaintiff had an MRI of her cervical spine, which showed mild degeneration.

Plaintiff underwent prior surgeries to both wrists and to her right elbow.  Plaintiff had surgeries on her right wrist in July of 2007 and her left wrist in September of 2008, and underwent ulnar transportation surgery to her right elbow in November of 2007.

On April 22, 2013, Plaintiff underwent an EMG of her right upper extremity, which was normal with no evidence of recurrent ulnar neuropathy.  Plaintiff had revision surgery at the right ulnar nerve on June 5, 2013 and scar tissue at the location of the prior surgery was addressed.

As a result of prior injuries and surgeries involving her wrists and right ulnar nerve, Plaintiff received Workers' Compensation benefits and had been out of work for about three years.  On September 14, 2009, Plaintiff was unemployed.  After September 14, 2009, Plaintiff searched for a full-time job.  Plaintiff started working part time as a daycare provider in February of 2010.

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a genuine dispute as to a material fact exists,

the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598 (1970)). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must identify evidence in the record that creates a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)). This standard applies "whether summary judgment is granted on the merits of the claim, or on an affirmative defense such as the statute of limitations." *BellSouth Telecomm., Inc. v. W.R. Grace & Co.-Conn*., 77 F.3d 603, 609 (2d Cir.1996).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (citation omitted).

As for the genuineness requirement, a dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Id.* As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation

omitted; emphasis added).[2]  Similarly, inadmissible hearsay is insufficient to create a genuine

issue of fact, "absent a showing that admissible evidence will be available at trial."  *Burlington*

*Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (citations

omitted).

Of course, when a non-movant has failed to respond to a movant's motion for summary

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Rather, the Court must (1) determine what material facts, if any, are *disputed* in the record

presented on the movant's motion, and (2) assure itself that, based on those *undisputed* material

facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v.*

*Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001); N.D.N.Y.

L.R. 7.1(b)(3).  What the non-movant's failure to respond to the movant's motion does is lighten

the movant's burden on its motion.

Similarly, in this District, where a non-movant has willfully failed to respond to a

movant's properly filed and facially meritorious memorandum of law (submitted in support of its

motion for summary judgment), the non-movant is deemed to have "consented" to the legal

arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[3]  Stated another

_____

[2]      As the Supreme Court has famously explained, "[the nonmoving party] must do
more than simply show that there is some metaphysical doubt as to the material facts."
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348
(1986) (citations omitted).

[3]      *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31
(N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to
oppose several arguments by defendants in their motion for summary judgment as consent by
plaintiff to the granting of summary judgment for defendants with regard to the claims that the

way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.    Legal Standards Governing Plaintiff's Claims

The New York State legislature promulgated New York's No Fault Law, N.Y. INS. LAW § 5101, *et seq.*, in an effort to "significantly reduce the number of automobile personal injury cases litigated in the courts." *Lopez v. Senatore*, 484 N.E.2d 130, 65 N.Y.2d 1017, 1020, 494 N.Y.S.2d 101 (1985) (quoting *Licari v. Elliott*, 441 N.E.2d 1088, 57 N.Y.2d 230, 236, 455 N.Y.S.2d 570 (1982)).  As a consequence, a person who suffers only "minor" injuries as the result of a car accident may no longer sue to recover damages for pain and suffering. *Hodder v. United States*, 328 F. Supp. 2d 335, 348 (E.D.N.Y. 2004).  Moreover, "New York courts have held that the no-fault statute is to be 'strictly construed.'" *Id.* (quoting *Liberty Mut. Ins. Co. v. United States*, 490 F. Supp. 328, 330 (E.D.N.Y.1980)).

---

arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

The No Fault Law precludes recovery for non-economic loss in automobile accident suits, unless a plaintiff has suffered a "serious injury." N.Y. INS. LAW § 5104(a); *Molina v. United States*, 301 F. Supp. 2d 317, 320 (S.D.N.Y.2004). Section 5102(d) of the Insurance Law defines such a serious injury as:

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d). "If it can be said, as a matter of law, that [a] plaintiff suffered no serious injury ..., then the plaintiff has no claim to assert and there is nothing for a jury to decide." *Licari*, 441 N.E.2d 1088, 57 N.Y.2d at 238, 455 N.Y.S.2d 570. Accordingly, whether a plaintiff has suffered a qualifying serious injury is a threshold inquiry properly decided at the summary judgment stage. *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 604 (S.D.N.Y.2004); *Molina*, 301 F. Supp. 2d at 320; *Licari*, 441 N.E.2d 1088, 57 N.Y.2d at 237, 455 N.Y.S.2d 570.

## III.     ANALYSIS

### A.     Whether a Question of Fact Exists Regarding Whether the Vehicle Owned and Operated by Defendants Collided With Plaintiff's Vehicle on September 14, 2009

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 29-6 at [Pl.'s Mem. of Law].) The Court would add only the following analysis regarding four of Defendants' chief arguments.

Defendants' first argument is that it is clear from the testimony of Plaintiff and Hector Rodriguez that the tractor-trailer identified by Hector to the police is not the tractor-trailer that collided with Plaintiff. To be sure, there is a discrepancy between Plaintiff's testimony and Hector's testimony regarding the location of the tractor-trailer at the time of Plaintiff's call to Hector after the collision. However, resolution of that fact is properly left to a jury, who could reasonably decide that the tractor-trailer identified by Hector was, in fact, the tractor-trailer that collided with Plaintiff's vehicle.

Defendants' second argument is that the photographs showing the height of the flatbed trailer and the damage to Plaintiff's vehicle is undisputed physical evidence that the tractor-trailer driven by Mathely did not cause the damage to Plaintiff's vehicle. The record contains several photographs of the damage to Plaintiff's vehicle, regarding which Plaintiff and Mathely testified.[4] The record also contains photographs, which, Mathley asserts by affidavit, were taken at the Bourdeau yard and show that "the entire height of the flatbed from the ground is 35 inches."[5] Finally, the record contains photographs, identified solely by attorney affidavit as photographs of measurements of Plaintiff's vehicle. To be sure, the photographs of the flatbed are very small in size and do not reflect enough of the trailer in order for the viewer to have an appropriate frame of reference. Also, the photographs of the measurements of Plaintiff's vehicle may not be properly authenticated by an attorney affidavit. Moreover, when compared to the photographs of the damage to Plaintiff's vehicle that were identified by both Plaintiff and

---

[4]    *See* Dkt. No. 24-10 (Ex. I to Aff. of Latha Raghavan, Feb. 7, 2014); Dkt. No. 24-8 at 14-15 (Dep. of Ricky Mathely, Aug. 30, 2013); Dkt. No. 24-6 at 50-54 (Dep. of Damaris Lopez, Aug. 22, 2013).

[5]    *See* Dkt. No. 24-12 (Aff. of Ricky Mathely, Feb. 6, 2014, ¶¶ 9-11, Ex. A).

Mathely, the photographs of the measurements appear to reflect that the height of the door handle from the ground is 41 inches, whereas the damage that appears in the authenticated photographs is some inches below the door handle. Consequently, the photographs, even if properly authenticated, merely create questions of fact for a jury to decide regarding whether the damage to Plaintiff's vehicle was caused by Defendants' tractor-trailer.

Defendants' third argument is that, based on Mathely's sworn affidavit indicating that the tractor-trailer he was driving on September 14, 2009 was equipped with a governor that sets the speed limit at 65 miles per hour, there is no question of fact for a jury to decide regarding whether that tractor-trailer is the one that collided with Plaintiff's vehicle. However, Hector testified that the tractor-trailer he identified was traveling at speeds in excess of 65 miles per hours. A jury could weigh the credibility of this testimony and determine that the tractor-trailer driven by Mathely was traveling at speeds in excess of 65 miles per hour.

Defendants' fourth argument is that the police report and record of Hector's call to the Thruway Authority are inadmissible hearsay. Hearsay evidence is admissible at the summary judgment stage if the contents would otherwise be admissible at trial. *See Rosenthal v. Nierenberg*, No. 09-CV-8237, 2010 WL 3290994, at *2, n. 2 (S.D.N.Y. Aug. 10, 2010) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 (nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment")). A police report or accident report would likely be admissible either as a business record under Federal Rule of Evidence ("FRE") 803(6), or as a public record under FRE 803(8). *See Goldstein v. Laurent*, No. 09-CC-2437, 2011 WL 3586447, at *4 (S.D.N.Y. August 2, 2011). Consequently, at trial Plaintiff could successfully introduce both the police report and the record of Hector's report of the accident, as long as both were properly authenticated.

For all of these reasons, questions of fact remain for a jury to decide regarding the issue of whether Defendants' tractor-trailer collided with Plaintiff's vehicle on September 14, 2009. Accordingly, Defendants' motion for summary judgment cannot be granted on this basis.

**B.      Whether a Question of Fact Exists Regarding Whether Plaintiff Suffered a Serious Injury Under New York State Insurance Law Section 5102(d) As a Result of the September 14, 2009 Motor Vehicle Accident**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendants' memoranda of law. (*See generally* Dkt. No. 24-19, at 7-11 [Defs.' Mem. of Law]; Dkt. No. 30, at 4-13 [Defs.' Reply Mem. of Law].). The Court adds the following analysis.

Here, Plaintiff contends that her injuries qualify as serious because they gave rise to a significant disfigurement; a permanent loss of use of a body organ, member, function or system; a permanent consequential limitation of use of a body organ or member; a significant limitation of use of a body function or system, and/or a medically determined injury or impairment of a non-permanent nature which prevented her from performing substantially all of the material acts which constitute her usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the accident. (*See* Dkt. No. 24-4, Ex. C to Raghavan Aff. [Pl.'s Resp. to Interrogs, Apr. 13, 2013]; Dkt. No. 29-5, Ex. N to Aff. of Jon C. Dupee, Jr., Mar.10, 2014 [Pl.'s Supp. Resp. to Interrogs, Mar. 10, 2014].)

In connection with their motion for summary judgment, the Defendants bear the initial burden of establishing a prima facie case that the Plaintiff has not suffered a serious injury within the meaning of Section 5102(d). *See Byrne v. Oester Trucking, Inc.*, 386 F. Supp. 2d 386, 392 (S.D.N.Y.2005); *Gaddv v. Eyler*, 591 N.E.2d 1176, 79 N.Y.2d 955, 956-57, 582 N.Y.S.2d 990

(1992).  Once the Defendants make out a prima facie case, the burden shifts to Plaintiff to come

forward with sufficient evidence demonstrating that she has sustained a serious injury.  *See*

*Ebewo*, 309 F. Supp. 2d at 604 (quoting *Gaddy*, 79 N.Y.2d at 957).  Both sides must meet their

burden by adducing competent evidence, which may include the affidavits or declarations of

physicians.  *See Byrne*, 386 F. Supp. 2d at 392 (citing *John v. Engel*, 768 N.Y.S.2d 527, 2

A.D.3d 1027 (N.Y. App. Div. 2003)); *Ebewo*, 309 F. Supp. 2d at 604; *Rogers v. McLamb*, No.

04-CV-7043, 2006 WL 2734228, at *3 (S.D.N.Y. Sept. 22, 2006).

      In support of their motion for summary judgment, Defendants argue that they have met

their burden to show the lack of a causal relationship between the accident and Plaintiff's injury.

Defendants' expert, Dr. Fredric S. Schoen, M.D., prepared a report, which contains his findings

after an independent medical examination of Plaintiff as well as his summary of Plaintiff's

medical records and deposition testimony in this case.  (*See* Dkt. No. 24-16 [Ex. B to Aff. of

Fredric S. Schoen, M.D., Feb. 6, 2014].)  By sworn affidavit, Dr. Schoen opines that, with a

reasonable degree of medical certainty, Plaintiff "suffered no serious injury as a result of the

accident of September 14, 2009."  (Dkt. No. 24-14 at ¶ 29 [Schoen Aff.].)  Dr. Schoen noted

Plaintiff's extensive prior history of complaints of pain and surgery related to the right ulnar

nerve and both wrists and that Plaintiff did not complain of any such pain when she presented to

the emergency room on November 10, 2009, where she was noted to have no tenderness of the

upper extremity.  Therefore, Dr. Schoen concluded, with a reasonable degree of medical

certainty, "there is no objective evidence indicating that any injury or exacerbation to the right

ulnar nerve occurred as the result of the accident of September 14, 2009."  (*Id.* at ¶ 18.)

Moreover, according to Dr. Schoen, the finding of scar tissue during surgery in June 2013 at the

site of prior surgery "is not evidence of any new injury. Scar tissue can be expected to form when there has been surgery." (*Id.* at ¶ 19 [emphasis in original].) Dr. Schoen also stated with a reasonable degree of medical certainty that "a bump to the elbow did not cause the internal scar tissue at the prior surgical site that was noted by Dr. Campbell and removed." (*Id.* at ¶ 20.)

Regarding Plaintiff's claimed cervical spine injuries, Dr. Schoen noted the absence of objective evidence to support such an injury, including the November 10, 2009 emergency room examination findings of cervical strain and a February 16, 2010 MRI, which revealed mild degenerative changes that occurred over years. Dr. Schoen also noted that when he conducted his medical examination of Plaintiff, she "winced and complained of pain when I touched her neck in the slightest possible way and she would not permit me to manually examine range of motion of the cervical spine." Dr. Schoen concluded that Plaintiff's "complaints of severe pain during the independent medical [examination] and presentation of range of motion are embellished and non-physiologic and out of proportion to the objective findings on MRI." (*Id.* at ¶ 26.) Consequently, Dr. Schoen found "no objective evidence of cervical spine injury. At most, [Plaintiff] may have had temporary musculoskeletal neck complaints as a result of the accident. However, such complaints would be expected to resolve within two or three weeks." (*Id.* at ¶ 28.)

Plaintiff argues that Defendants failed to meet their burden to show causation because Dr. Schoen fails to set forth objective testing of Plaintiff's range of motion. Plaintiff cites caselaw for the proposition that a defendant will not meet its burden to show that a plaintiff suffered no serious injury where it submits an expert's conclusion of a plaintiff's "appropriate" or "excellent" range of motion of the cervical spine without setting for the objective testing

performed to arrive at his conclusion. *See Geba v. Obermeyer*, 832 N.Y.S.2d 70, 38 A.D.3d 597 (N.Y. App. Div. 2007); *Walters v. Papanastassiou*, 819 N.Y.S.2d 48, 31 A.D.3d 439 (N.Y. App. Div. 2006). Here, however, Plaintiff refused to allow Dr. Schoen to conduct an examination of her cervical range of motion. Moreover, here, unlike in the cases cited by Plaintiff, MRI results contradicted Plaintiff's complaints of severe pain. For these reasons, Defendants have met their burden to show a lack of causation. For this reason alone, Defendants are entitled to summary judgment. In any event, for the following independent reasons, Plaintiff's claims of serious injury fail.

First, as indicated in Point II.A. of this Decision and Order, in this District (as in many districts), when a non-movant fails to oppose a legal argument contained in a movant's memorandum of law, the movant's burden with regard to that legal argument has been lightened such that, in order to succeed with regard to that legal argument, he need only show the facial merit of the legal argument. Here, Defendants have, at the very least, met their lightened burden with respect to their arguments against Plaintiff's claim of serious injury based on a permanent loss of use of a body organ, member, function or system; a permanent consequential limitation of use of a body organ or member; and a significant limitation of use of a body function or system, which arguments are unopposed by Plaintiff.

Second, "[t]he Court of Appeals of New York has held that 'permanent loss of use' must be total to qualify as a 'serious injury.'" *Son Oh v. Murray*, No. 07-CV-5145, 2009 WL 605796, at *4 (E.D.N.Y. Mar. 9, 2009) (quoting *Oberly v. Bangs Ambulance Inc.*, 751 N.E.2d 457, 96 N.Y.2d 295, 299, 727 N.Y.S.2d 378. (N.Y. 2001)). Nothing in the record here supports the conclusion that Plaintiff has suffered a total loss of use of her cervical spine or right elbow.

Consequently, Plaintiff's claimed serious injury based on a permanent loss of use is dismissed.

Third, "under the permanent consequential limitation and significant limitation categories, [a plaintiff is] required to submit medical proof containing 'objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiff's present limitations to the normal function, purpose and use of the affected body organ, member, function or system.'" *Felton v. Kelly*, 44 A.D.3d 1217, 1218-19, 845 N.Y.S.2d 137 (N.Y. App. Div. 2007) (quoting (*John*, 2 A.D.3d at 1029)). Here, Plaintiff submits only the sworn affidavit and report of her treating surgeon, Dr. Campbell. Nowhere in the report does Dr. Campbell make reference to range of motion, except to state that in January of 2008, prior to the accident, Plaintiff's elbow range of motion was normal. (*See* Dkt. No. 29-3 [Ex. L to Dupee, Jr., Aff.].) Also, regarding Plaintiff's cervical spine, the objective medical findings show only cervical strain and mild degenerative changes. For these reasons, Plaintiff cannot prove a serious medical injury under the permanent consequential limitation and significant limitation categories. Fourth, this court need not reach the merits of Plaintiff's argument that she has a serious injury based on significant disfigurement because it is raised for the first time in opposition to Defendants' motion for summary judgment. *See Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (citing *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir.2006) (declining to reach merits of argument raised for first time in opposition to summary judgment); *Syracuse Broad. Corp. v. Newhouse*, 236 F.2d 522, 525 (2d Cir.1956) (holding that district court was "justified" in "brush[ing] aside" further argument not alleged in complaint but raised for first time in opposition to summary judgment)). Plaintiff did not supplement her response to Defendants' interrogatory with her allegation of significant disfigurement as a result

18

of her June 5, 2013 surgery until March 10, 2014, the date she opposed Defendants' motion for summary judgment.  In any event, even if the Court were to reach the merits of Plaintiff's allegation of significant disfigurement, it would dismiss it for lack of evidentiary support. Although Dr. Campbell opines that Plaintiff's scar "constitutes a significant disfigurement," he makes no reference to disfigurement in his report.  (*See* Dkt. No. 29-3 [Ex. L to Dupee, Jr., Aff.].)  Moreover, given that Plaintiff underwent a prior surgery of her right ulnar nerve in November of 2007, the lack of evidence supporting her allegation of disfigurement as a result of the September 14, 2007 accident is fatal to her claim of serious injury on this basis.  At her August 22, 2013 deposition, more than two months following the June 5, 2013 surgery, Plaintiff compared the current appearance of her scar to its appearance after her November 2007 surgery, testifying that it is now "probably bigger" and "a little longer" although she does not know how much longer and she does not have photographs of the scar both before and after the June 2013 surgery.  (Dkt. No. 24-6 at 110-111 [Pl.'s Dep.].)  Dr. Crawford states in his affidavit that Plaintiff's scar is now three and a half inches long, but fails to compare it to the size and appearance of Plaintiff's scar after the November 2007 surgery.  Consequently, Plaintiff's allegation of significant disfigurement as a result of the September 14, 2009 accident is not supported by any objective medical evidence.  For all of these reasons, Plaintiff cannot prove a serious medical injury under the category of significant disfigurement.

Finally, in order to establish a prima facie case of serious injury under the "90/180" category, i.e, that she was disabled from substantially all of her usual and customary daily activities for at least 90 out of the 180 days following the accident, Plaintiff "must present objective evidence of 'a medically determined injury or impairment of a non-permanent nature'" as well as the substantiality of her limitations.  *See Toure v. Avis Rent A Car Sys.*, 774 N.E.2d

1197, 1204-05, 98 N.Y.2d 345, 357, 746 N.Y.S.2d 865, 872-873 (N.Y. 2002) (quoting INS. LAW § 5102(d); *Licari*, 441 N.E.2d 1088, 57 N.Y.2d at 236-239, 455 N.Y.S.2d 570)). Here, the record reflects that Plaintiff first sought medical treatment approximately two months after the accident, at which time she was diagnosed with cervical strain. Moreover, Plaintiff began part-time employment as a daycare provider in February of 2010. Plaintiff testified that between September of 2009 and February of 2010 she was "looking for a job" and that, while she found a part-time job, it was her intention to take a full-time job. (Dkt. No. 24-6 at 125 [Pl.'s Dep.].) Plaintiff further testified that, prior to taking the part-time job no doctor told her that she "shouldn't be doing stuff." (*Id.*) However, in opposition to Defendants' motion for summary judgment, Plaintiff cites her February 25, 2014 affidavit, wherein she asserts that while it was her intention to seek employment in September of 2009, due to the injuries she suffered in the September 14, 2009 accident, she was unable to start working until February 10, 2010. (*See* Dkt. No. 29-4 at ¶ 10 [Aff. of Damaris Lopez, Feb. 25, 2014].) "[I]t is well settled in this circuit that a party's affidavit which contradicts [her] own prior deposition testimony should be disregarded on a motion for summary judgment." *Hale v. Mann*, 219 F.3d 61, 74, n.1 (2d Cir. 2000) (citation omitted). Consequently, Plaintiff cannot establish a medically determined injury or impairment of a non-permanent nature as well as the substantiality of her limitations in order to prove serious injury under the "90/180" category.

For all of these reasons, there are no factual questions for a jury to decide regarding whether Plaintiff suffered a serious injury as a result of the September 14, 2009 accident. Therefore, Defendants' motion for summary judgment against Plaintiff is granted.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment against Plaintiff (Dkt. No.

24) is **GRANTED**; and it is further

**ORDERED** that this action is **DISMISSED** in its entirety.

Dated: March 30, 2015
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge